56 So.2d 577

**Succession of ALLEN.**

No. 39883.

Dec. 10, 1951.

Rehearing Denied Jan. 14, 1952.

E. Gordon West, Baton Rouge, for appellant.

Landry & Landry, Baton Rouge, and Howell Carter, Jr., New Orleans, for plaintiffs and appellees.

LE BLANC, Justice.

Cornelius Neal Allen died in East Baton Rouge Parish on May 2, 1947. On May 22, 1947 Malinda Onora Allen, alleging herself to be his widow petitioned the district court of that parish to be recognized as his surviving widow in community and his sole and only heir at law. She alleged that she was entitled in her own right to be declared owner of an undivided half interest in and to all of the property as widow in community and as there were no ascendents or descendents nor forced heirs, she was also entitled to be recognized as the owner and sent into possession of the remaining undivided one-half interest. in and to all of the property depending upon his succession.

From a descriptive list of the property which is attached to the petition, it appears that the decedent's interest in all of it was an undivided one-half. The total estimated cash value of the estate was $7,300 and the decedent's one-half interest therefore amounted to the sum of $3650.

On the same day that the petition was presented to it, the District Court rendered an ex parte judgment recognizing Malinda Onora Allen as the surviving widow and sole and only heir of the deceased and ordered her to be sent into possession of the property belonging to his estate.

On April 6, 1948, Rev. John Allen, a resident of the City of New Orleans, Morris Allen, a resident of the City of Chicago, Illinois, and Amanda Allen, a resident of Baton Rouge, petitioned the Court to annul and set aside the ex parte judgment rendered on May 22, 1947 and asked that they be recognized as the sole and only heirs at law of the decedent, being his legitimate brothers and sister. The ground on which they based their demand is that Cornelius Neal Allen was never married to Malinda Onora and consequently there was no community of acquets and gains existing between them and that all property left by him, both real and personal, belonged solely to his estate.

The district judge, after trial of the case, rendered judgment in favor of the petitioners and against Malinda Onora Allen, setting aside the ex parte judgment which he had rendered previously on May 22, 1947 and recognizing said petitioners as the sole and only heirs at law of Cornelius Neal Allen (sometime referred to as Neal Allen) and putting them in possession. From this judgment Malinda Onora (sometime referred to as Rose) has taken this appeal.

There are two issues presented for consideration and decision in the case: 1. Whether or not Malinda Onora was ever actually married to Cornelius Allen and 2. If so, was her marriage to him lawful or

one that produced the civil effects of a marriage in her favor.

In a written opinion handed down by him on the first hearing the District Judge came to the conclusion that even if the evidence was sufficient to establish the marriage between Cornelius Allen and Malinda Onora, it was illegal, null and void because of the impediment that existed due to a prior marriage of Malinda Onora to a man named Frank Murphy from whom she was never divorced.

An application for a new trial based on several grounds was presented to the Court and a new trial was granted. One of the grounds in particular was that even though it was not proven conclusively that the first husband of Malinda Onora, Frank Murphy, was dead at the time of her marriage to Cornelius Allen, the testimony nevertheless supported the fact that she not only believed him to be dead, but had good reason to so believe and consequently she had contracted the second marriage in good faith and that under the circumstances she was a putative wife in whose favor all of the civil effects of a valid marriage were produced.

Additional evidence was introduced in an effort to prove the death of Frank Murphy which the trial judge held was not sufficient and he therefore reinstated the former judgment which he had rendered.

A stipulation introduced in the record by consent of counsel reveals the following:

"That Honorable Joseph P. Jewell, Clerk of Court, Pointe Coupee Parish, (in which Parish the marriage between Cornelius Allen and Malinda Onora is alleged to have taken place), if called as a witness by defendant, would testify as set forth in the certificate signed by him on October 19, 1948, to the manner in which marriage licenses were formerly issued by the Clerk's Office, i. e., that no record was made at the time of issuance, and that it often happened that the duplicate was not returned for recording.

"That the marriage records of the said clerk's office extend from the present time back to the year 1843, and that these records do not disclose the issuance of a marriage license to Rose and the deceased, nor the recording of a marriage between them.

"That deceased was lawfully married to Frances Simms on January 14, 1889.

"That the plaintiffs are the legitimate brothers and sister of the deceased, and, as such, are entitled to inherit the estate, in the event Rose is found not to be entitled thereto, as the surviving spouse in community, and sole and only heir, in default of ascendants and legitimate descendants.

"That Rose and Frank Murphy were lawfully married some years prior to her alleged marriage to Neal."

It is proper to state at this time also that Frances Simms to whom Cornelius Allen was married on January 14, 1889 died

some years after her marriage, leaving two children, issue of the marriage but that both of them died without issue.

The testimony shows that Frank Murphy abandoned his wife Malinda approximately four or five years after he was married to her and went to New Orleans. He was never heard from any more. Malinda testified that she heard that he died in New Orleans; that he had had smallpox; that she obtained the news of his death from the hospital and that was over fifty years ago.

Sam Taylor, who was well acquainted with Frank Murphy, was called as a witness to testify on her behalf. He swore that he also had heard that Murphy had died in New Orleans. He stated that a steamboatman who knew them all well and who used to travel up and down the country had told him that Murphy died from smallpox at the pest house where he had seen him himself. This was some two or three years after Murphy had left Pointe Coupee Parish and gone to New Orleans.

Malinda also testified that she had lived with one John Henry Ridley for approximately seven years after Murphy abandoned her and then she started to live with Cornelius Allen and approximately one year after they had lived together they were married. At the time of this marriage, she says that Cornelius had three children by another woman whom he was not married to and that these three children were raised by her in the home which they kept. She and Cornelius lived together for a period of approximately forty years.

There is no documentary evidence in the record to support the alleged marriage between Malinda and Cornelius. However there is considerable proof, otherwise, to show that this marriage did take place. First, Malinda, or Rose as she is called, testified that the wedding took place at night; that she was sick and Neal came to her and stated that he wanted to join the Odd Fellows and that he had to be married in order to do so. She states that they were married by Charlie Smith, Pastor of the local Baptist Church, who is now dead; she named several persons who were present and gives other details of the marriage. One of the persons she pointed out as being present was John Allen, now Rev. John Allen, one of the plaintiffs in the case. He, however, denies that he was there. Her sister, Fannie Gland, who also testified as a witness for Malinda, made several conflicting statements as to what happened at the wedding and also concerning the death of Frank Murphy. Her testimony does not command much favorable consideration. But Clabe Tinsley and Dawson Johnson testified that they were members of the local lodge of Odd Fellows; that the lodge had previously turned down Neal for membership because he was living with a woman to whom he was not married; that Neal came to the meeting one night with a paper which was read out to them

in the lodge, supposedly a certification of the marriage by Rev. Charlie Smith. The lodge evidently considered this as satisfactory proof of the marriage since they admitted him to membership.

Further there was introduced in the record certified copies of four notarial acts of sale or mortgage executed between the dates December 22, 1913 to May 28, 1934 in all of which Neal Allen appears as one of the parties and declared that he was married to Rose Allen, born Honore. In the one of December 22, 1913, passed before C. V. Porter, Jr., Notary, he declared that he was first married to Frances Simms, deceased and again married, and now living with his wife, Rose Honore (born Honore) widow of Frank Murphy.

We think that the evidence as a whole is sufficient to make proof that a marriage did exist between Cornelius Allen and Malinda Onora. Whilst it is true that Article 105, R.C.C. prescribes that "The marriage must be celebrated in the presence of three witnesses of full age, and an act must be made of the celebration, signed by the person who celebrates the marriage, by the parties and the witnesses", and further prescribes certain formalities concerning its recordation, it has been held that in the absence of proof of such celebration, the marriage may be shown by evidence that the parties held themselves out as married persons, under circumstances sufficient to raise a presumption of marriage.

See Boykin v. Jenkins, 174 La. 335, 140 So. 495.

In Oliphant v. Louisiana Long Leaf Lumber Co., 163 La. 601, 112 So. 500, 502, there is a rather comprehensive discussion of the question of the proof of marriage and there it was held that parole evidence, consisting of testimony of an eye witness, is admissible to prove the marriage without first showing the issuance of a license and the making of a proces verbal as required by Civil Code Article 105. We quote the following which we consider to be appropriate from that case: "Marriage lies at the very foundation of our social fabric. It ought not to be held that a marriage cannot be proved without first proving that a license issued, that an act showing the celebration was prepared and returned, and that all evidence thereof has been lost or destroyed, or that the celebrant thereof failed to make a return, before parole evidence becomes admissible to establish the fact of marriage, without positive legislation to that effect. See note to Grigsby v. Reib, L.R.A.1915E, on page 47. While those authorized to celebrate marriages are presumed to discharge their duty and make return, and those required to record the return are presumed to do so, yet these are only presumptions, which may be overcome by showing that the marriage was in fact celebrated;   *   *   *."

Indeed, the trial judge did not hold that the parties in this case were not married.

All that he did was to express some doubt as to the proof that is in the record. He apparently did not find it necessary to give too much consideration to the testimony that was offered inasmuch as he concluded that there was a legal impediment to such marriage, · because of Malinda Onora's former marriage to Frank Murphy and therefore it was null and void.

█  Where the trial judge erred, in our opinion, was in not giving any consideration, as far as we can see, to the contention of the defendant that even if the proof was not sufficient to show that Malinda's former husband, Frank Murphy, was dead that she had reason to, and actually did believe him to be dead and that she therefore was in good faith in marrying Cornelius Allen.

Article 117 of the Civil Code prescribes that: "The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith", and Article 118 prescribes that "If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor and in favor of the children born of the marriage." If, therefore, Malinda Onora honestly believed that her former husband, Frank Murphy, was dead at the time she married Cornelius Allen, it appears under the jurisprudence that that was sufficient to establish her good faith and place her in the category of a putative wife under the provisions of the articles of the Code just cited.

In Hondlenk v. John, 178 La. 510, 152 So. 67, there was a situation concerning the disappearance of a former husband which was not very unlike the one that existed in the present case and the Court there held that the wife who had received news that he had died of pneumonia four years after he had abandoned her, and believing the news to be true, contracted a subsequent marriage the following year, was a putative wife and that the second marriage produced all of the civil effects of marriage.

In the present case Malinda Onora testified, as already shown, that she had been informed of the death of Frank Murphy and certainly it was a longer period of time before she contracted a second marriage than did the wife in the case just cited. True, she is rather vague in her recollection concerning the information she received but when we consider that she is an illiterate Negro woman, approximately eighty years of age at the time she was testifying and was trying to recall matters that happened fifty years before, some allowances must be made in weighing her testimony and she should not be expected to be able to testify in detail. Moreover, it is rather significant that she stated that the information she had was that Murphy had died of smallpox and this part of her testimony at least seems to be corroborated by that of the witness, Sam

Taylor, who said that he also remembers having received news of Murphy's death and that he had died of smallpox in the City of New Orleans.

In Succession of Marinoni, 183 La. 776, 164 So. 797, 804, it is stated that "A putative marriage is not founded on the *actual marriage* or the *ceremonial marriage*, but on the *reasonable belief* by one or both of the parties that they were *honestly* married and that their offspring came from a lawful· and honorable union." Numerous decisions of this Court are cited in that case, among them, Smith v. Smith, 43 La.Ann. 1140, 10 So. 248, 250, from which the following is quoted: "The good faith referred to [in Articles 117 and 118 R.C.C.] means an honest and reasonable belief that the marriage was valid, and that there existed no legal impediment thereto", and also Jones v. Squire, 137 La. 883, 69 So. 733, 736, in which it is stated: "And if there were any doubt in the matter, it would have to be solved in favor of the good faith of the parties. Succession of Navarro, 24 La.Ann. 298; Gaines v. City of New Orleans, 6 Wall. 642, 18 L.Ed. 950."

We conclude, therefore, that under the jurisprudence and under the facts submitted by the defendant, the good faith required by Articles 117 and 118 of the Civil Code has been established; that Malinda Onora was a putative wife and as such entitled to all the civil effects which flowed from her marriage to Cornelius Allen. This means, of course, that she is entitled as his widow in community to the undivided one-half of the property acquired by them during their marriage as a matter of right and as his sole and only heir at law, of the other undivided half.

For the reasons stated it is ordered that the judgment appealed from be and the same is hereby reversed, set aside and annulled and it is further ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Malinda Onora, widow of Cornelius Allen and against the plaintiffs, Reverend John Allen, Morris Allen and Amanda Allen, rejecting their demands to be recognized as the sole and only heirs at law of the said Cornelius Allen, deceased, and as such entitled to be sent and placed in possession of all the property belonging to his estate and it is further ordered, that the defendant, Malinda (Rose) Onora be and she is hereby recognized as surviving widow in community of the deceased, Cornelius (Neal) Allen and as such, the owner in her own right and sent into possession of an undivided one-half in and to all the property depending on his succession, and also as the sole and only heir at law of the said decedent and as such, the owner and sent into possession of the remaining one-half interest in and to all of the said property and more particularly the real estate which is described as follows, to-wit:

1. A certain lot or parcel of ground, with all the buildings and improvements thereon, located in the Sixth Ward of the

parish of East Baton Rouge, State of Louisiana, in what is known as "addition to Suburb Swart", and shown on the plan thereof as Lot 6 of Square "G", said lot fronting 50 ft. on the South side of Reddy Street by a depth between parallel lines of 120 ft.; being the same property acquired by Act of Sale of record in Book 281, Folio 445 of the Conveyance Records of the Parish of East Baton Rouge.

2. A certain lot or parcel of ground, together with all the buildings and improvements thereon, situated in that part of the City of Baton Rouge, Louisiana, known as "Bookertown" and designated on a plan thereof as Lot 12, of Square "H", measuring 35 ft. front on Orange Street, by a depth of 100 ft., and being the same property acquired by Act of Sale & Mortgage of record in Book 52, Folio 161 of the Conveyance Records of the Parish of East Baton Rouge, State of Louisiana.

3. A certain lot or parcel of ground with all the buildings and improvements thereon situated in the Parish of East Baton Rouge, State of Louisiana, South of the City of Baton Rouge in what is known as "Addition to Suburb Swart" and being part of the original sections 87 and 88 laid out by Jos. Gottlieb and designated on the map made by K. Swart in October, 1908 as Lot 6 of Square "B" having a front of 50 feet on the south side of Matilda Street by a depth between parallel lines of 100 ft. being the same property acquired by Act of Sale of record in Book 88, Folio 385 of the Conveyance Records of the Parish of East Baton Rouge, State of Louisiana.

4. Two certain lots or parcels of ground with all the improvements thereon situated in that portion of the City of Baton Rouge, designated on the official map as the Lehman Tract, said lots being in the square bounded by Dickerson Street, Railroad Avenue, Annette Street and a proposed street, and being designated as Lots Nos. 5 and 22 of said square, said lot No. 5 having a front of 40 ft. on Railroad Avenue, the said Lot No. 22 lying south of Lot No. 5 and having a front on aforesaid proposed street, same being in accordance with the map made by A. G. Mundinger filed December 12, 1919, in the office of the Clerk of this Parish and being the same property acquired by Act of Sale of record in Book 107, Folio 352 of the Conveyance Records of the Parish of East Baton Rouge, State of Louisiana.

It is further ordered that the plaintiffs, appellees herein pay all costs of these proceedings.

MOISE, J., takes no part.